IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE WESTERN AND SOUTHERN LIFE INSURANCE COMPANY, et al., | : | Case No. 1:11-CV-667 |
| | : | |
| Plaintiffs, | : | Judge S. Arthur Spiegel |
| v. | : | |
| | : | ORAL ARGUMENT SET |
| BANK OF AMERICA, N.A., et al., | : | DECEMBER 20, 2011 |
| | : | |
| Defendants. | : | |
| | : | |

---

**PLAINTIFFS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO REMAND**

---

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT .............................................................................................................2

    I.    The Court Should Remand This Action Even If Bankruptcy "Related To"
        Jurisdiction Exists.......................................................................................2

        A.    Western & Southern Need Not Prove that This Action Can Be Timely
            Adjudicated in State Court ...........................................................2

        B.    This Matter Can Be Timely Adjudicated in the Court of Common Pleas...4

            1.    The Court of Common Pleas Routinely and Timely Adjudicates
                Commercial Disputes ......................................................4

            2.    The Status of the State Court and Bankruptcy Proceedings............6

            3.    The Commercial Judge to Whom This Case Is Assigned Has the
                Expertise to Effectively Preside Over this Dispute ........................6

    II.    Bank of America Has Not Established "Related To" Jurisdiction .........................8

        A.    Bank of America Has Not Filed Proofs of Claim and the Deadline to Do
            So Expired Years Ago .................................................................8

        B.    Bankruptcy "Related To" Jurisdiction Is Not Limitless...........................11

        C.    Even If Bank of America Could File a Late Proof of Claim, Any Link
            Between This Action and the Cited Bankruptcies Is Extremely Tenuous 11

            1.    The Bankrupt Originators Contributed No More Than 0.13% of
                the Loans Underlying the Offerings .............................................12

            2.    The LBI and WMI Bankruptcies Are Irrelevant .........................13

    III.    Permissive Abstention Also Applies .................................................14

CONCLUSION ........................................................................................................15

i

## **TABLE OF AUTHORITIES**

**Case**                                                                                   **Page**

*Abbatiello v. Monsanto Co.*,
    No. 06-cv-266 (KMW), 2007 U.S. Dist. LEXIS 19790 (S.D.N.Y. Mar. 5, 2007)............11

*Allstate Ins. Co. v. Merrill Lynch & Co.*,
    No. 11-cv-2280 (DAB), 2011 U.S. Dist. LEXIS 124333 (Aug. 15, 2011) .........................9

*Allstate Insurance Company v. Credit Suisse Securities (USA) LLC*,
    No. 11-cv-2232 (NRB), 2011 U.S. Dist. LEXIS 120734 (S.D.N.Y. Oct. 19, 2011).......8, 9

*Ann Arbor Emps. Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.*,
    572 F. Supp. 2d 314 (E.D.N.Y. 2008) .............................................................................11

*Carpenter v. Wichita Falls Indep. Sch. Dist.*,
    44 F.3d 362 (5th Cir. Tex. 1995)......................................................................................7

*Carpenters Pension Trust for S. Cal. v. Ebbers*,
    299 B.R. 610 (C.D. Cal. 2003) .......................................................................................11

*Celotex Corp. v. Edwards*,
    514 U.S. 300 (1995) ........................................................................................................11

*Charles Schwab Corp. v. Banc of Am. Sec. LLC*,
    No. 10-cv-03489 (LHK), 2011 U.S. Dist. LEXIS 29530 (N.D. Cal. Mar. 11, 2011) .......13

*Commonwealth Life Ins. Co. v. Oakes*
    No. 91-cv-1782 (SHB), 1991 U.S. Dist. LEXIS 20315 (N.D. Ohio Nov. 6, 1991)..........10

*Dunkirk Ltd. Partnership v. TJX Cos.*,
    139 B.R. 643 (N.D. Ohio 1992) .....................................................................................11

*Fed. Home Loan Bank of San Francisco v. Deutsche Bank Sec.*,
    No. 10-cv-3039 (SC), 2010 U.S. Dist. LEXIS 138564 (N.D. Cal. Dec. 20, 2010)...........13

*Fed. Home Loan Bank of Seattle v. Barclays Capital, Inc.*,
    No. 10-cv-0139 (RSM), 2010 U.S. Dist. LEXIS 102391 (W.D. Wash. Sept. 1, 2010)....13

*Fed. Home Loan Bank v. Banc of Am. Funding Corp.*,
    760 F. Supp. 2d 807 (N.D. Ill. 2011)..............................................................................12

*French v. Fisher*,
    290 B.R. 313 (N.D. Ohio 2003) .......................................................................................3

*In re Ciena Capital LLC*,
   No. 08-13783 (AJG) ...................................................................................10

*In re Dow Corning Corp.*,
   86 F.3d 482 (6th Cir. 1996) ........................................................................11

*In re Dow Corning Corporation*,
   86 F.3d 482 (6th Cir. 1996) ........................................................................11

*In re Miller*,
   2011 Bankr. LEXIS 3709 (B.A.P. 6th Cir. 2011) .........................................9

*In re Prestige Realty Group of Ohio & Fla., LLC*
   420 B.R. 894 (Bankr. S.D. Fla. 2009) ........................................................10

*In re Remington Rand Corp.*,
   836 F.2d 825 (3d Cir. 1988) .........................................................................9

*In re Salem Mortgage Co.*,
   783 F.2d 626 (6th Cir. 1986) ........................................................................8

*In re Transue & Williams Stamping Co.*,
   1994 Bankr. LEXIS 1066 (Bankr. N.D. Ohio July 6, 1994) ..........................8

*In re Wash. Mut., Inc. Sec.*,
   No. 09-cv-0664 (MJP), 2009 U.S. Dist. LEXIS 107986 (W.D. Wash. Nov. 2, 2009) .....10

*In re Wolverine Radio Co.*,
   930 F.2d 1132 (6th Cir. 1991) ....................................................................10

*Lone Star Fund V (US) v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) ......................................................................10

*Lovelace v. Software Spectrum*,
   78 F.3d 1015 (5th Cir. Tex. 1996) ..............................................................14

*Mass. Bricklayers & Masons Trust Funds v. Deutsche Alt-A Sec., Inc.*,
   399 B.R. 119 (E.D.N.Y. 2009) ....................................................................11

*N.Y. City Employees Ret. Sys. v. Ebbers* (In re Worldcom, Inc. Sec. Litig.),
   293 B.R. 308 (S.D.N.Y. 2003) ....................................................................11

*New Jersey v. Fuld*,
   No. 09-cv-1629 (AET), 2009 U.S. Dist. LEXIS 54481 (D.N.J. June 24, 2009) ..............11

*Robinson v. Michigan Consol. Gas. Co., Inc.*,
   918 F.2d 579 (6th Cir. 1990) ...................................................................................8, 11

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
   447 B.R. 302 (C.D. Cal. 2010) .........................................................................................10

*Tenn. Consol. Ret. Sys. v. Citigroup, Inc.*,
   Nos. 03-5785/5786, 2003 U.S. App. LEXIS 27926 (6th Cir. Nov. 4, 2003) .....................2

*Things Remembered, Inc. v. Petrarca*,
   516 U.S. 124 (1995) ..........................................................................................................2

*Tow v. Credit Suisse First Boston Corp.*,
   No. 04-cv-560 (CFD), 2004 U.S. Dist. LEXIS 14073 (D. Conn. July 20, 2004) ............11

*Village of Oakwood v. State Bank & Trust Co.*,
   539 F.3d 373 (6th Cir. 2008) ...........................................................................................13

*XL Sports, Ltd. v. Lawler*,
   49 Fed. App'x 13 (6th Cir. 2002) .......................................................................................2

**Statute**                                                                               **Page**

12 U.S.C. § 1821(d) ...............................................................................................................13

28 U.S.C. § 1334(c) .............................................................................................................2, 4

28 U.S.C. § 1334(d) ...........................................................................................................2, 14

28 U.S.C. § 1452(b) ...............................................................................................................2

28 U.S.C. § 1447 ..................................................................................................................15

Amendments to the Rules of Superintendence for the Courts of Ohio, Temp. Sup. R. 1.02(C).....5

FED. R. EVID. 802 ..................................................................................................................12

## PRELIMINARY STATEMENT

Mandatory abstention principles require that this case be remanded to the Ohio Court of Common Pleas, Hamilton County. Bank of America's Opposition[1] to remand hinges entirely upon the unsupported assertion that the Court of Common Pleas cannot timely adjudicate this case. That court, however, routinely handles matters more complex than the present case. Further, this case is assigned to Judge Martin, the commercial judge already presiding over a similar mortgage-backed securities ("MBS") case involving Plaintiffs and Banc of America Securities LLC, *The Western and Southern Life Insurance Company et al. v. DLJ Mortgage Capital, Inc. et al.*, Case No. A01105352 (Hamilton County) (the "DLJ Action"). Plaintiffs filed the DLJ Action in July 2011, trial is scheduled for September 2013, and discovery has already commenced. Trial dates have also been set and discovery is proceeding in two other multi-defendant MBS matters filed by Western & Southern in the Court of Common Pleas in July and August 2011. Bank of America has no grounds for its assertion that this matter cannot be timely adjudicated in that court, especially given the expertise Judge Martin is already developing over similar factual and legal issues in the DLJ Action.

Bank of America's arguments concerning bankruptcy "related to" jurisdiction are also without foundation. Bank of America conspicuously ignores case law holding that an indemnification claim against a bankrupt third party cannot support "related to" bankruptcy jurisdiction where the indemnitee did not file a proof of claim for such indemnification prior to the claims bar date. Bank of America cannot use an unasserted, hypothetical indemnification claim to manufacture "related to" bankruptcy jurisdiction.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in Western & Southern's Motion to Remand (Dkt. No. 7). References to "Opposition" or "Opp." are to Bank of America's Opposition to Plaintiffs' Motion to Remand (Dkt. No. 18).

Accordingly, Western & Southern respectfully submits that this Court should enter an

Order remanding this case, and requiring Bank of America to pay the attorneys' fees and

expenses incurred by Western & Southern as a result of Bank of America's improper removal.

## ARGUMENT

### I. The Court Should Remand This Action Even If Bankruptcy "Related To" Jurisdiction Exists

This matter should be remanded to the Ohio Court of Common Pleas, Hamilton County

on mandatory abstention grounds so that it can be efficiently adjudicated without further

procedural delay.  Bank of America concedes that substantially all of the factors require

mandatory abstention, including that (i) this proceeding is based solely on state law; (ii) Bank of

America's only purported basis for federal jurisdiction is bankruptcy "related to" jurisdiction;

(iii) the Court of Common Pleas has jurisdiction over this matter; (iv) this a not a "core"

bankruptcy proceeding; and (v) Western & Southern's motion was timely.  Opp. at 17; *see* 28

U.S.C. § 1334(c)(2).  Nevertheless, Bank of America contends that mandatory abstention is

inapplicable because the Court of Common Pleas is incapable of adjudicating this matter in a

timely manner.  *Id.*  Bank of America is plainly wrong.[2]

### A. Western & Southern Need Not Prove that This Action Can Be Timely Adjudicated in State Court

To sustain its claim that Ohio state court cannot timely adjudicate this matter, Bank of

America must offer supporting evidence.  *See XL Sports, Ltd. v. Lawler*, 49 Fed. App'x 13, 20

(6th Cir. 2002) (remand required where nothing in the record suggests that state court could not

---

[2] Any order issued by this Court remanding the case for lack of subject matter jurisdiction or abstaining from exercising bankruptcy "related to" jurisdiction is not reviewable.  *See* 28 U.S.C. § 1334(d), 1452(b); *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127-28, 133 L. Ed. 2d 461, 116 S. Ct. 494 (1995); *Tenn. Consol. Ret. Sys. v. Citigroup, Inc.*, Nos. 03-5785/5786, 2003 U.S. App. LEXIS 27926 (6th Cir. Nov. 4, 2003).

timely adjudicate); *French v. Fisher*, 290 B.R. 313, 318 (N.D. Ohio 2003) ("The parties have set

forth no reason why the matter is incapable of timely adjudication in [state] court.").

Bank of America does not even contend that it has met this burden.  Instead, Bank of

America relies on a single case, *In re National Century Financial Enterprises*, 323 F. Supp. 2d

861 (S.D. Ohio 2004), to argue that Western & Southern must show that the Court of Common

Pleas can timely adjudicate this case, and that Bank of America need not show anything.  In

*National Century*, however, the defendant opposing remand ***in fact did show*** that if the case

proceeded in state court, it would interfere with an MDL court specifically established to

facilitate the disposition of similar cases.  *Id.* at 882-83.  The *National Century* defendants

further showed that the MDL court had already presided over similar cases and was familiar with

the relevant legal and factual issues.  *Id.* at 883.  Only after the defendants had shown that the

matter could not be timely adjudicated in state court did the burden shift to plaintiffs to offer

evidence that it could.  *Id.* at 881.

The *National Century* court did not hold that a party seeking remand has the initial

burden of proving that the state court can timely adjudicate.  Rather, the court held that only after

the party *opposing* remand "legitimately contest[s] the . . . state court's ability to timely

adjudicate the case[]" is the party *seeking* remand obligated to offer evidence of timely

adjudication.  *Id.* at 881.  *National Century* confirms rather than questions that a party opposing

transfer has the initial burden of showing the state court's ability to timely adjudicate.

Bank of America makes no showing that allowing this case (which does not assert any

liability against any bankrupt entity) will interfere with any bankruptcy.  Nor does it make any

showing that this matter cannot be timely adjudicated in the Court of Common Pleas.  In fact,

three other Western & Southern MBS cases are proceeding apace in the Court of Common Pleas, without any timeliness complaint by any defendants.[3]

### B.    This Matter Can Be Timely Adjudicated in the Court of Common Pleas

A district court's determination of whether a matter can be timely adjudicated in state court within the meaning of 28 U.S.C. § 1334(c)(2) turns upon "'whether allowing an action to proceed in state court will have any unfavorable effect on the administration of a bankruptcy case.'" *National Century*, 323 F. Supp. 2d at 881 (*quoting In re Midgard Corp.*, 204 B.R. 764, 778 (B.A.P. 10th Cir. 1997).  Courts consider the following seven factors:

> (1) backlog of the state court and federal court calendar; (2) status of the proceeding in state court prior to being removed (*i.e.,* whether discovery had been commenced); (3) status of the proceeding in the bankruptcy court; (4) the complexity of the issues to be resolved; (5) whether the parties consent to the bankruptcy court entering judgment in the non-core case; (6) whether a jury demand has been made; and (7) whether the underlying bankruptcy case is a reorganization or liquidation case.

*Id.* at 882 (*quoting In re Midgard*, 204 B.R. at 778-79).  Each of these factors either weighs in favor of finding that the Court of Common Pleas can timely adjudicate this matter or is neutral.

### 1.    The Court of Common Pleas Routinely and Timely Adjudicates Commercial Disputes

Based on the record before the Court, the first consideration, relative docket congestion, supports the conclusion that the Court of Common Pleas can timely adjudicate this matter.  Bank of America does not dispute that the Court of Common Pleas has a specialized part created to facilitate the timely resolution of commercial disputes.  Instead, it takes issue with Western &

---

[3] Bank of America suggests that this case should stay in this Court so that the case may be coordinated with the Morgan Stanley Matter.  The Morgan Stanley Matter, however, involves MBS issued and sold by Morgan Stanley, IndyMac, and Merrill Lynch, and not Bank of America.  In addition, Western & Southern's motion to remand the Morgan Stanley Matter is currently pending.  What would make the most sense is to remand both this case and the Morgan Stanley Matter to the Court of Common Pleas to be coordinated with the three actions already proceeding there.

Southern's use of the term "Commercial Division" to describe the Court of Common Pleas' "commercial docket" that was created in 2008 as part of a pilot program.  Opp. at 17.  This trivial distinction is irrelevant.  As set forth in Western & Southern's Remand Brief and supporting materials, the Court of Common Pleas has a specialized part to facilitate the timely adjudication of commercial disputes.  *See* Remand Br. at 10.[4]   The commercial judges in Hamilton County participate in a training program "on the administration of commercial dockets offered or approved by the Supreme Court of Ohio Judicial College."  Amendments to the Rules of Superintendence for the Courts of Ohio, Temp. Sup. R. 1.02(C).  The judges who are assigned to the Court of Common Pleas commercial docket have experience adjudicating complex commercial disputes.

The cases on the commercial docket are subject to case management plans administered and enforced by the Court of Common Pleas.  For example, in the DLJ Action, Judge Martin entered an order with tight deadlines concerning discovery and setting trial for September 3, 2013.  *See* Fitzgerald Decl., Ex. 1.  Judge Myers, who is overseeing the two additional Western & Southern lawsuits, has set trial dates for both matters, and they are moving on similarly compressed deadlines.  *Id.* Ex. 2 (trial in *The Western and Southern Life Insurance Company et al. v. GS Mortgage Securities Corp et al.*, No. A1106193 (Hamilton Cty.) set for August 5, 2013).[5]

---

[4] References to "Remand Brief" or "Remand Br." are to Western & Southern's memorandum of law in support of its Motion to Remand (Dkt. No. 7).

[5] The scheduling order in *The Western and Southern Life Insurance Company et al. v. Residential Funding Company, LLC*, A1105042 (Hamilton County) has not been finalized but trial has been set for January 6, 2014 and discovery is proceeding.

5

### 2.    The Status of the State Court and Bankruptcy Proceedings

The status of the state court proceedings neither weighs in favor or against a finding of timely adjudication because this case was removed before discovery could commence. However, the status of the bankruptcy proceedings weighs heavily in favor of a finding that this matter can be adjudicated in the Court of Common Pleas without interfering with a bankruptcy case.  The TBW, WMI and LBI bankruptcies are all in the very late stages.  As discussed in Section II(A), the bar date for filing claims proof of claims expired in each of these cases years ago.  Plans have already been confirmed in both the TBW and LBI bankruptcy cases discharging any unasserted claims such as Bank of America's hypothetical claims for indemnification. Fitzgerald Decl. Exs. 3-4.  And confirmation of WMI's bankruptcy plan appears imminent as the parties have submitted a consensual plan for approval after a lengthy mediation.  *Id.* Ex. 5.  This action will not interfere with the work of the bankruptcy courts because their work is essentially done.

Similarly, the seventh factor, "whether the underlying bankruptcy case is a reorganization or liquidation case," weighs strongly in favor of the Court of Common Pleas' ability to timely adjudicate this action.  TBW, WMI and LBI are all liquidation bankruptcies.  In "a chapter 11 case with a confirmed liquidating plan, where the primary concern is the orderly accumulation and distribution of assets, the requirement of timely adjudication is seldom significant.'" *National Century*, 323 F. Supp. 2d at 882 (*quoting In re Midgard*, 204 B.R. at 779).

### 3.    The Commercial Judge to Whom This Case Is Assigned
###        Has the Expertise to Effectively Preside Over this Dispute

The complexity of the issues involved in this case does not suggest the Court of Common Pleas is incapable of timely adjudicating this matter.  Bank of America implies that Ohio state court judges lack the judicial expertise to handle this matter, arguing that this case involves

"billions of dollars of securities" and involves "complex issues or law and fact."  Opp. at 17.

This argument fails for multiple reasons.

First, the Court of Common Pleas commercial judges, including Judge Martin, are respected jurists who are more than capable of grasping the issues involved in the present case. They are trained and accustomed to handle commercial disputes, especially those exclusively invoking state law such as this one.

Second, the issues in this case are not necessarily difficult or "complex."  Quite simply, because the Offering Materials contained false or misleading statements, Western & Southern is entitled to rescind its purchase of the Certificates.  The amount of discovery that is required is the only factor that might justify categorizing this case as "complex," and the Court of Common Pleas is, of course, fully equipped to handle cases involving voluminous discovery.

Third, because all of Western & Southern's claims arise under Ohio law, Ohio state courts are presumptively the preferred forum.  *See, e.g., Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 367 (5th Cir. Tex. 1995) (recognizing the "superiority of state-court forums for state-law claims").

Finally, Bank of America incorrectly states that this case involves "billions of dollars of securities."  The face amount of the MBS purchased by Western & Southern in this case is $134 million, a fraction of what defendants claim.  Compl. ¶ 44.  Moreover, the amount in controversy has no bearing on the ability of a state court to timely adjudicate a matter.  The Court of Common Pleas has adjudicated larger damage cases, and there is no reason in cannot timely adjudicate this one.[6]

---

[6] The remaining factors support a finding that the Court of Common Please can timely adjudicate this matter because Western & Southern has made a jury demand and the parties have not consented to entry of judgment by a bankruptcy court.

## II.     Bank of America Has Not Established "Related To" Jurisdiction

In the Sixth Circuit, "related to" jurisdiction exists only where the cause of action asserted "could conceivably have any effect on the estate being administered in bankruptcy." *Robinson v. Michigan Consol. Gas. Co., Inc.*, 918 F.2d 579, 583 (6th Cir. 1990).  While the Court of Appeals has adopted a broad standard for bankruptcy "related to" jurisdiction, it has done so with the caveat that "'situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement.'"  *Id.* (quoting *In re Salem Mortgage Co.*, 783 F.2d 626, 634 (6th Cir. 1986)).  This is just such a case.

### A.     Bank of America Has Not Filed Proofs of
### Claim and the Deadline to Do So Expired Years Ago

Bank of America concedes that it has not filed a proof of claim in the bankruptcy cases of TBW, WMI, or LBI.  Bank of America further concedes that the bar date for filing proofs of claim in those bankruptcies passed years ago.  Since the claim bar date has passed, any possible connection between this action and the bankruptcies cited is too remote and tenuous to form the basis of "related to" jurisdiction.  *See In re Transue & Williams Stamping Co.*, 1994 Bankr. LEXIS 1066, at *17-19 (Bankr. N.D. Ohio July 6, 1994) (no effect on bankruptcy estate where no party seeking removal had filed proof of claim prior to bar date); *Allstate Ins. Co. v. Credit Suisse Securities (USA) LLC*, No. 11-cv-2232 (NRB), 2011 U.S. Dist. LEXIS 120734 (S.D.N.Y. Oct. 19, 2011) ("*Credit Suisse*").

The Bank of America defendants conspicuously ignore the recent and well-reasoned opinion in *Credit Suisse*.  In that case, the defendants argued that the plaintiff's claims relating to MBS issued by Credit Suisse gave rise to "related to" jurisdiction because certain loans originated by TBW and another bankrupt party were among the loans underlying the MBS.  *Id.* at *12.  The Southern District of New York, applying the same "conceivable effect" test that is

operative in the Sixth Circuit, found no bankruptcy "related to" jurisdiction.  As the court reasoned, "[t]he only way defendants' indemnification claims against the Bankrupt Originators can actually affect the allocation of property among the estates' creditors is if defendants have asserted their claims against the bankruptcy estates."  *Id.*  The *Credit Suisse* plaintiff's case could have no "conceivable effect" on the TBW bankruptcy case because Credit Suisse let the bar date pass without filing a proof of claim.  *Id.* at *13.

Like Bank of America, the Credit Suisse defendants argued that they could theoretically commence a proceeding in the bankruptcy court to seek leave to file a late proof of claim.  *Credit Suisse* rejected this argument, because a party seeking to file a late proof of claim must demonstrate "excusable neglect" for its failure to timely file a proof of claim.  *Id.* at *14-15. Because Credit Suisse's indemnification claims accrued when the indemnification agreements were executed, the fact the lawsuit potentially giving rise to an indemnification claim was filed after the bar date was insufficient to establish "excusable neglect."  *Id.* at *14-15.  The defendants should have asserted prior to the bar date a proof of claim for indemnity obligations arising after the bar date.  *Id.*; *see also Allstate Ins. Co. v. Merrill Lynch & Co.*, No. 11-cv-2280 (DAB), 2011 U.S. Dist. LEXIS 124333, at *9-10 (Aug. 15, 2011) (no "related to" jurisdiction because proof of claim was not filed prior to the bar date and defendant could not demonstrate excusable neglect).  Any ruling to the contrary would conflict with federal policy in favor of finality in bankruptcy proceedings.  *See In re Remington Rand Corp.*, 836 F.2d 825, 833 (3d Cir. 1988) (noting the importance of finality in bankruptcy proceedings); *In re Miller*, 2011 Bankr. LEXIS 3709, at *31-32 (B.A.P. 6th Cir. 2011) (same).

This case is on all fours with *Credit Suisse*.  As established in Western & Southern's Remand Brief, the deadline to file claims in the WMI and LBI bankruptcies expired more than

two years ago, and the deadline to file a claim in the TBW bankruptcy expired 19 months ago. *See* Remand Br. at 5. Bank of America did not file a proof of claim for indemnification in any of the bankruptcy cases. Not surprisingly, Bank of America does not assert that it intends to file a late proof of claim—tacitly admitting that it could not demonstrate "excusable neglect."

The cases that Bank of America cites for the proposition that "related to" jurisdiction is present even when the bar date has passed without the filing of a proof of claim are not on point. *See* Opp. at 16. Indeed, only one of the cases cited, *In re Ciena Capital LLC*, No. 08-13783 (AJG), even arguably addresses the point. 2009 Bankr. LEXIS 2728, at *13-14 (Bankr. S.D.N.Y. July 28, 2009). *Ciena*, however, is inapposite because the bankruptcy court concluded that the case was one "arising under" Title 11. *Id.* "Related to" jurisdiction was mentioned only in passing *dicta*. *Id.* Moreover, even if the *Ciena* court had held that "related to" jurisdiction was present, this no longer appears to be good law in the Southern District of New York in light of the more recent holdings by district court judges effectively overruling *Ciena*.

The remaining two cases cited by Bank of America on this point provide no support for the bank's position. In *Commonwealth Life Ins. Co. v. Oakes*, the court merely held in abeyance the motion to remand subject to an evidentiary hearing on the issue of jurisdiction. No. 91-cv-1782 (SHB), 1991 U.S. Dist. LEXIS 20315, at *14-18 (N.D. Ohio Nov. 6, 1991). The court made no ruling on the issue whatsoever. And the issue was not raised in *In re Prestige Realty Group of Ohio & Fla., LLC*, because the bar date still had not passed. 420 B.R. 894, 899 (Bankr. S.D. Fla. 2009) (noting that parties could still file timely proof of claims in the bankruptcy case).[7]

---

[7] The other cases cited by Bank of America in support of "related to" jurisdiction are similarly inapposite because they either involved timely filed proofs of claim, the date for filing claims had not passed, or the court simply did not address the timing of the proof of claim. *See In re Wolverine Radio Co.*, 930 F.2d 1132, 1143 (6th Cir. 1991) (proof of claim filed); *Lone Star Fund V (US) v. Barclays Bank PLC*, 594 F.3d 383, 386 n.2 (5th Cir. 2010) (same);

### B.     Bankruptcy "Related To" Jurisdiction Is Not Limitless

Bank of America contends that the actual filing of a proof of claim is "irrelevant" under

*In re Dow Corning Corporation*, 86 F.3d 482 (6th Cir. 1996) (*Dow Corning I*), effectively

arguing that the Sixth Circuit adopted a limitless test for "related to" jurisdiction.  Bank of

America is wrong.

The Supreme Court has admonished that "a bankruptcy court's 'related to' jurisdiction

cannot be limitless." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995).  And the Sixth Circuit

has held that while the "conceivable effect" test for "related to" jurisdiction is broad, bankruptcy

jurisdiction is nonetheless cabined—there is no "related to" jurisdiction when there is only an

"extremely tenuous" connection to a bankruptcy case.  *Robinson*, 918 F.2d at 583.  Nothing in

*Dow Corning I* dictates otherwise.  Indeed, in *Dow Corning I*, the Sixth Circuit noted that the

parties with indemnification claims had all either filed a proof of claim or had represented to the

court that they would file a proof of claim.  *See Dow Corning I*, 86 F.3d at 493-94.

### C.     Even If Bank of America Could File a Late Proof of Claim, Any Link<br>        Between This Action and the Cited Bankruptcies Is Extremely Tenuous

Contrary to Bank of America's assertion, Opp. at 10-12, the magnitude of an

indemnification claim is a relevant factor in assessing "related to" jurisdiction under *Dow*

*Corning I.*  86 F.3d at 494 ("A single possible claim for indemnification or contribution simply

---

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 447 B.R. 302, 307 (C.D. Cal. 2010) (same); *In re Wash. Mut., Inc. Sec.*, No. 09-cv-0664 (MJP), 2009 U.S. Dist. LEXIS 107986, at \*16 (W.D. Wash. Nov. 2, 2009) (bankruptcy court had already entered an order allowing indemnification); *Ann Arbor Emps. Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.*, 572 F. Supp. 2d 314, 318 (E.D.N.Y. 2008) (proof of claim filed); *In re Nat'l Century*, 323 F. Supp. 2d 861, 867 (S.D. Ohio 2004) (same); *Tow v. Credit Suisse First Boston Corp.*, No. 04-cv-560 (CFD), 2004 U.S. Dist. LEXIS 14073, at \*7 (D. Conn. July 20, 2004) (same); *N.Y. City Employees Ret. Sys. v. Ebbers* (In re Worldcom, Inc. Sec. Litig.), 293 B.R. 308, 320 (S.D.N.Y. 2003) (same); *see also Mass. Bricklayers & Masons Trust Funds v. Deutsche Alt-A Sec., Inc.*, 399 B.R. 119, 123 (E.D.N.Y. 2009) (court did not address issue); *New Jersey v. Fuld*, No. 09-cv-1629 (AET), 2009 U.S. Dist. LEXIS 54481, at \*7-11 (D.N.J. June 24, 2009) (same); *Abbatiello v. Monsanto Co.*, No. 06-cv-266 (KMW), 2007 U.S. Dist. LEXIS 19790, at \*13-15 (S.D.N.Y. Mar. 5, 2007) (same); *Carpenters Pension Trust for S. Cal. v. Ebbers*, 299 B.R. 610, 613 (C.D. Cal. 2003) (same); *Dunkirk Ltd. Partnership v. TJX Cos.*, 139 B.R. 643, 645 (N.D. Ohio 1992) (same).

does not represent the same kind of threat to a debtor's reorganization plan as that posed by the thousands of hypothetical indemnification claims at issue here.").  Here, the link between this action and the TBW, LBI, and WMI bankruptcies is, at best, "extremely tenuous," because any potential indemnification claims are insignificant in relation to the total amount in controversy.

### 1.    The Bankrupt Originators Contributed No More Than 0.13% of the Loans Underlying the Offerings

As Western & Southern established in its Remand Brief, TBW, WaMu Bank, and Lehman Bank originated at most a tiny fraction (0.123%, or $123.2 million of $10 billion in loan principal) of the mortgage loans underlying the MBS in this action.  Remand Br. at 4, 9.  Bank of America does not seriously contest this fact.  Instead, Bank of America offers mere hearsay that, undisclosed to investors, TBW originated $19.5 million of loans underlying BAFC 2006-5 in addition to the $3.2 million that are disclosed in the offering materials for BAFC 2007-1.  Opp. at 12; Gerber Decl. ¶ 3.[8]  But Bank of America also concedes that WaMu Bank and Lehman Bank originated *fewer* loans than Western & Southern surmised from its review of the offering materials.  *Compare* Gerber Decl. ¶ 3 (alleging that "various records" show WaMu Bank and Lehman Bank originated a combined total of $107.5 million) *with* Remand Brief at 4 (offering materials indicate that Lehman Bank and WaMu Bank originated $120 million).

Even accepting Bank of America's hearsay evidence, TBW, WaMu Bank and Lehman Bank still originated only $130.2 million of the $10 billion in total loan principal (0.13%).  Such a minute connection is far too remote to give rise to "related to" jurisdiction.  *See, e.g., Fed. Home Loan Bank v. Banc of Am. Funding Corp.*, 760 F. Supp. 2d 807, 810 (N.D. Ill. 2011)

---

[8] Defendants state that Western & Southern's failure to ascertain what Bank of America's internal records show constitutes a "complete misstatement of the facts in this case."  Opp. at 10.  This is absurd.  Western & Southern cannot misrepresent facts withheld from it.  Bank of America relies solely on an affidavit of its counsel to the effect that he has reviewed "various records" from Bank of America files indicating that TBW originated loans underlying BAFC 2006-5 not disclosed to investors.  Gerber Decl. ¶ 3.  The "various records" are not attached and have been provided neither to Western & Southern nor the Court.

(indemnification claims for a small fraction of liability "cannot serve as a very small jurisdictional tail that can wag the very large jurisdictional dog of this lawsuit as a whole").

### 2. The LBI and WMI Bankruptcies Are Irrelevant

Even if a late proof of claim were submitted and accepted, Bank of America only has an arguable indemnification claim relating to *0.02%* of the total principal at issue, because Bank of America has not offered any admissible evidence suggesting that WMI or LBI agreed to assume liability for the loans contributed to the offerings in this case by WaMu Bank or Lehman Bank.

Bank of America concedes that WMI did not agree to indemnify the bank for the WaMu Bank originated loans. Opp. at 13-14. Bank of America's sole basis for asserting WMI is liable for the WaMu Bank loans is the contention that a holding company is always liable for the debts of a failed banking subsidiary. Bank of America is simply wrong. Absent an assumption of liabilities by a third party, any claim against a failed bank, or relating to the acts or omissions of a failed bank, must be made directly to the FDIC, not the failed bank's parent company. *See generally* 12 U.S.C. § 1821(d); *see also Village of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 385-87 (6th Cir. 2008) (claims for liability of failed bank must be submitted to the FDIC absent assumption of liability by third party). The cases cited by Bank of America are not to the contrary. [9]

---

[9] Bank of America claims that Western & Southern "completely ignores" case law that holds a parent's bankruptcy gives rise to "related to" jurisdiction over indemnification claims against non-bankrupt subsidiaries. However, the cases cited by Bank of America all resulted in remand of the case to state court in part because any connection to the parent's bankruptcy case was "remote" at best. *See Charles Schwab Corp. v. Banc of Am. Sec. LLC*, No. 10-cv-03489 (LHK), 2011 U.S. Dist. LEXIS 29530, 21-22 (N.D. Cal. Mar. 11, 2011) ("the remote chance that BofA will ever obtain any payout from the IndyMac Parent bankruptcy suggest that the likely overall effect of this litigation on either bankruptcy is minimal or non-existent"); *Fed. Home Loan Bank of San Francisco v. Deutsche Bank Sec.*, No. 10-cv-3039 (SC), 2010 U.S. Dist. LEXIS 138564, at *36, (N.D. Cal. Dec. 20, 2010) (similar holding); *Fed. Home Loan Bank of Seattle v. Barclays Capital, Inc.*, No. 10-cv-0139 (RSM), 2010 U.S. Dist. LEXIS 102391, at *18-19 (W.D. Wash. Sept. 1, 2010) (similar holding).

With regard to Lehman Bank loans, Bank of America offers no admissible evidence that LBI agreed to indemnify Bank of America for liabilities associated with Lehman Bank loans. The only "evidence" that Bank of America offers is a Form 8-K filed by Bank of America in which Bank of America asserts that Lehman Capital sold loans included in BAFC 2007-3. Gerber Decl., Ex. F.  SEC filings do not constitute business records and, therefore, cannot be offered as evidence for the truth of their contents unless they are subject to some other exception to the rule against hearsay.  *See, e.g., Lovelace v. Software Spectrum*, 78 F.3d 1015, 1018 (5th Cir. Tex. 1996) (SEC filings "should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents."); *Ritz Camera & Image, LLC v. Sandisk Corp.*, 772 F. Supp. 2d 1100, 1109 (N.D. Cal. 2011) (same).

## III.    Permissive Abstention Also Applies

This Court may also abstain from taking jurisdiction and remand this matter if it concludes abstention will serve "the interest of justice, or . . . comity with State courts or respect for State law."  28 U.S.C. § 1334(c)(1).  The decision as to whether permissive abstention is appropriate is solely within this Court's discretion and is not reviewable.  *Id.* ¶ 1334(d)  As set forth in Western & Southern's Remand Brief, districts courts weigh a number of factors when determining whether permissive abstention is appropriate.  Remand Br. at 10-13.

Bank of America attempts to avoid permissive abstention are unavailing:

- Having argued in opposition to mandatory abstention that the Court of Common Pleas was incapable of adjudicating "complex issues of law," Bank of America then argues in opposition to permissive abstention that this case does *not* involve difficult or unsettled issues of state law.  *Compare* Opp. at 17 *with* Opp. at 19.  Bank of America cannot have it both ways—even under its articulation of the applicable standards, either mandatory abstention applies or permissive abstention applies.

- Bank of America contends that this case "may have a significant impact on the administration of the bankrupt estates."  Opp. at 20.  As set forth in Section II, this is a red-herring for multiple reasons, including that Bank of America has not filed any

proofs of claim, that the bank does not contend that it will commence proceedings to file late proofs of claim, and that any hypothetical indemnity claims would relate to at most 0.13% of the loans underlying the MBS at issue.

- Bank of America's contention that there is another proceeding brought in this Court involving "identical issues of law and fact" is a gross overstatement. While the Morgan Stanley Matter asserts similar state law claims, it involves wholly distinct securities sponsored, issued and underwritten by wholly distinct parties. The Morgan Stanley Matter involves different pools of mortgage loans and unique fact witnesses. There is no factual overlap.

- Bank of America attempts to distance itself from the forum shopping that occurred in the Countrywide Matter by arguing that it was not a party to that action. The bank, however, ignores that its parent company and Defendant Banc of America Securities are parties to that action and joined in the forum shopping gambit.

## CONCLUSION

For all of the foregoing reasons, and the reasons set forth in the Remand Brief, Western

& Southern respectfully submits that this action should be remanded to the Court of Common

Pleas, Hamilton County and that the Court award Plaintiffs attorney fees under 28 U.S.C. §

1447(c).

Respectfully submitted,

/s/ Steven S. Fitzgerald_____
David H. Wollmuth (*pro hac vice*)
dwollmuth@wmd-law.com
Steven S. Fitzgerald (*pro hac vice*)
sfitzgerald@wmd-law.com
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone:    (212) 382-3300
Facsimile:    (212) 382-0050

-and-

Glenn V. Whitaker, Trial Attorney (0018169)
gvwhitaker@vorys.com
Eric W. Richardson (0066530)

ewrichardson@vorys.com
Adam C. Sherman (0076850)
acsherman@vorys.com
Erik B. Bond (0087188)
ebbond@vorys.com
VORYS, SATER, SEYMOUR AND PEASE LLP
Suite 2000, Atrium Two
221 East Fourth Street
Cincinnati, Ohio 45202
Telephone:     (513) 723-4000
Facsimile:      (513) 852-7885


*Attorneys for Plaintiffs The Western and Southern Life Insurance Company, Western-Southern Life Assurance Company, Columbus Life Insurance Company, Integrity Life Insurance Company, and National Integrity Life Insurance Company.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of Plaintiffs' Reply Memorandum in Support of Its Motion To Remand and attached Declaration of Steven S. Fitzgerald dated December 13, 2011, was served upon counsel and parties via the Court's CM/ECF System, this 13th day of December 2011.

<u>/s/ STEVEN S. FITZGERALD</u>